Morning's arguments with Hill v. Gressert, and we'll hear first from Ms. Kaufman. I'm sorry, case number 16-31260. Good morning, and may it please the Court, my name is Mary Katherine Kaufman, and I represent three former New Orleans Police Department employees who have yet to receive a proper, individualized analysis of whether they are entitled to qualified immunity. This is a case arising from the investigation and prosecution of Plaintiff Darren Hill for a rape, robbery, and kidnapping that occurred in 1992 in New Orleans. Plaintiffs allege that Mr. Hill's due process rights were violated because exculpatory evidence was withheld and a false identification by the rape victim was procured by a suggestive lineup. Detective Carter, the lead detective, is not a party in this appeal. The three defendants in this appeal include Sergeant Hebert, who was Detective Carter's supervisor, who had discussions with her and signed off on her reports, Detective Gressert, a sex crimes detective, who may have accompanied Detective Carter throughout her investigation, and criminologist Wagaspak, who was asked to test the rape victim's underwear, conducted preliminary testing, and issued a report. During the last appeal, this court held that the district court failed to individually analyze whether each defendant was entitled to qualified immunity. This court remanded the case with instructions to assess the actions of the individual officers. What would be the difference between the proof against Carter and the proof against the ones that are now here? I'll ask both of you that. I'm sorry, what was the question? We've already held for Carter. Yes. Dismissed. Anyway, go back. What's the difference between Carter and Hassard, or Herbert, and Wagaspak? There's a huge difference, Your Honor. The record has vastly changed since the last time. How do you pronounce Wagaspak? Wagaspak. How do you pronounce it? Wagaspak. Well, there's not any evidence on him, is there? It's our position that there's not. There's not. So we will dismiss this to him. Well, we're asking this court to reverse the district court's finding entirely. The district court only made two rulings of the claims, a direct liability claim against Wagaspak and an indirect conspiracy claim against Gressit and Hebert. And it's our position that, leaving aside the factual disputes found by the district court, these defendants are entitled to qualified immunity. Okay. So tell us what, if you were writing our opinion, what would the last paragraph read, the decretal paragraph, what would it look like? I think that's the question being asked. What are you asking for? We're asking that you reverse the district court's finding. And? And we further ask that the court rule individually as to each defendant, specifically identifying which claims are being dismissed and which remain for trial. You're asking that we reverse and remand for more findings? No. We're asking that you reverse and grant qualified immunity. To reverse and render a judgment in favor of your client. That is correct. That's what you're asking for. That is correct. That's kind of important, because people get into the middle, but the end is kind of what matters. And so I'm asking you, you've got to tell us what you want in the end. We may or may not give it to you, but we want to know what it is. Yes. We believe that these three defendants are entitled to qualified immunity as a matter of law for numerous reasons. Well, on Gressert, on remand, the district court found that there was a fact dispute, facts that could support a finding that he was there with Carter when the unduly suggestive identification happened. So since whether he was there or not is a fact we can't review under our jurisdiction, why doesn't that mean that defendant goes to trial? Well, because, Your Honor, the district court did not make that finding as to a 14th Amendment claim. It only made that finding as to a conspiracy claim. And it's our position that the plaintiffs waived the conspiracy claim. Well, that's your argument. And you've been here today. Because of a statement made in the heat of an argument like this, which you've seen, that that's somehow a concession? Yes, Your Honor. This case started out, I'd like to point out, with 10. Even though in that supposed concession, the lawyer said it was a 14th Amendment claim, and conspiracy is just derivative liability from that. But you think, I mean, that's rather astonishing to me that you think that amounts to a binding concession. What authority can you compare it to that would say a passing comment like that made an oral argument that does say it's the 14th Amendment is what's at issue amounts to a waiver of the conspiracy claim? I have cited two claims regarding judicial admission. Martinez v. Bally's, Louisiana, Inc., where a statement was made in a deposition. And I also have one, the Montana v. Oren County, Texas case, where a counsel made a judicial admission in closing argument. But even if you put that aside, it's our position that the conspiracy claim must be dismissed pursuant to the Intracorporate Conspiracy Doctrine. And that claim bars— Did you argue that below? We did not, Your Honor. But this Court can address it now sua sponte. And under that doctrine, a single legal entity such as the New Orleans Police Department and its officers are incapable of conspiring with itself for purposes of Section 1983. A municipality cannot conspire with itself any more than a private individual can in the acts of the employees or the acts of the municipality. And this Court has applied that doctrine in civil rights conspiracy cases under both Sections 1983 and 1985. Gressen and Hebert? There was direct participation in the wrongdoing as opposed to simple knowledge of the wrongdoing. What was that? In other words, Mr. or Officer Gressert was there for the suggestive, allegedly suggestive presentation. Sergeant Hebert was a participant in working with Carter. So it wasn't simply, well, everybody's in a conspiracy because everybody kind of knows everybody and is involved with everybody. There was direct participation in working through the things that were wrong. Putting aside Wagaspak, I agree. But just looking at Hebert and Gressert, is that the same kind of thing that was being looked at in these other cases? It seems a little different to me. Well, it's our position that the District Court did not find that Gressert was actually there during the lineup. All the District Court found was, quote, that Gressert accompanied Carter throughout the investigation, end quote. End quote. Sergeant Hebert was active in discussing with Carter. Well, if I'm accompanying you, I mean, to me a conspiracy can bring in people that didn't actually do the wrong. But if you're there during that, I liken it a little bit to these excessive force cases. If Officer X is beating up on a prisoner and Officer Y is standing right there, then Officer Y can't just say, well, I'm not the one who beat him up, because you can't just stand there while somebody beats up on a prisoner. So why isn't that the right analysis here? Because this Court has held that mere presence at the crime scene or even close associations with conspirators standing alone is not enough. Okay, but that's when you're a drug dealer. Here, these officers each have an independent duty to these defendants. It's not like if I'm just standing there and somebody else is dealing drugs, I don't, as just an ordinary citizen, put aside, I'm not a judge in this hypo, I'm just standing there as an ordinary citizen, I don't have any obligation or duty to anybody. But these officers do. They can't just say, oh, I don't have any duty because this is so-and-so's case, so I can just stand there while they violate all their civil rights and that's okay. That isn't our case law. Well, there's nothing to indicate that Gressert was there and knew that that was a suggestive lineup or that it would be withheld from the prosecution. Gressert and Hebert can't be held liable for doing their job. They must have conspired to violate Mr. Hill's due process rights. Here, even if the allegations against Carter are true, which we dispute, none of the facts found by the district court or in the record support the legal conclusion that Gressert or Hebert intended for Carter to withhold Brady evidence or falsify evidence. For instance, there's no evidence by the district court or in the record establishing that Gressert or Hebert had any idea as to what was or was not handed over to the prosecution. Simply being privy to Carter's – I thought Gressert's, it's not based on disclosure of the – I mean, it's just based on being part of an unduly suggestive lineup which violates due process. And then the failure to disclose that. Yes, but I'd also like to point out that the lineup itself, we don't have the actual photographs that were shown to the rape victim in 1992. The photographs that were shown to her were subject to the motion to suppress hearing where the criminal court judge looked at the photographs and denied the motion to suppress identification. Doesn't our prior opinion already say that there's a fact issue on whether the lineup was a constitutional violation that had to go to the jury? Yes. So we're stuck with that and the only question is whether Gressert was there when it happened, which the district court said there's evidence to believe he was. Well, it's our position that the intercorporate conspiracy doctrine would bar the claim and that the facts found by the district court are immaterial to the actual conspiracy claim. I'd like to move on and discuss whether Mr. Hill had any right to receive Brady material prior to his adjudication procedure in 1999. While a criminal defendant is typically entitled to Brady material when he goes to trial, here Mr. Hill either did not have a trial or he waived his Brady right through stipulations agreed to by his attorney. What is not in dispute is that Mr. Hill did not receive a typical trial. Mr. Hill was arrested in 1992, but he was not adjudicated until 1999. In that six-year period, there were numerous continuances and there was a 1992 suppression hearing. Then in 1999, he was finally adjudicated, but the actual label of that proceeding is disputed. Regardless of what you call it. Now we have a transcript. On remand, a transcript was provided. I've read it. I'll give you it's a brief trial. I'll give you that. But the judge treats he calls it a trial. He makes a ruling at the end. So what basis is there for now saying it was some sort of agreed resolution or non-trial? Well, regardless of what you call it, Mr. Hill waived his right to receive Brady material. He agreed through stipulations that the only evidence that would be introduced was the evidence from the competency hearings and the evidence from the pretrial hearing, the suppression hearing. So by doing that, he waived his right to Brady material. What authority says that? I mean, he had the Brady material. You could have said I wasn't the guy who did this. Get me out of here. Well, the plaintiffs haven't made that allegation, and that allegation isn't plaid. They only made that just now. The entire case is about the fact that if the police had disclosed everything, Mr. Hill wouldn't have been in the system for 20 years. We've cited the case. Well, actually, plaintiffs cited the case U.S. v. Robertson that holds that through stipulations, plaintiffs can waive their right to Brady material. Plaintiffs have never identified any legal authority establishing that Mr. Hill had a Brady right under this context. And if this court were to hold that, it would be creating new law. Even if this court found that Mr. Hill had a Brady right under that context, that right was not— Trials often have stipulations. I mean, it looks to me what happened in this case was what happens in federal court. You can have stipulated bench trials where we're going to agree on some of these things. It's a firearm. Okay, we'll agree it came from Massachusetts, so there was interstate commerce. We agree that this guy has a prior felony, so that's met. We're just going to dispute this one fact. Stipulations happen in every trial to varying degrees. It seems to me your argument is that because some things were stipulated, there's no Brady right? That's correct. Getting Brady material would not have affected the procedure because Mr. Hill agreed that the case would be decided on evidence that had already been introduced. He gave up the right to introduce additional evidence through the stipulations. All right. The city of New Orleans is saying there's no duty to disclose exculpatory material when there are stipulations as part of the trial. That's not what we're saying. Good, because otherwise we'd never get any cases tried. If this court were to find that Mr. Hill had a Brady right in the context of his adjudication— I'm a little bit confused about what your position is. He first said if there's stipulations, then you waive Brady, and you said yes, and then he said so any stipulation waives Brady, and you said no. So which is it? I mean, it seems to me if you stipulate that the gun traveled in interstate commerce, you can't later challenge, oh, the one evidence that it traveled in interstate commerce. But you could still challenge evidence that was suppressed that would show you weren't there, and they have an alibi witness that says you weren't there at the location where you supposedly possessed the gun. Right? Right. It's our position that Mr. Hill waived his right to Brady material, and that right was not clearly established. There's no case law establishing that Mr. Hill had a Brady right under his procedure in 1999, and there's no case that says that now. Wouldn't that have been the case in the first appeal? If you're saying it's not clearly established now, it certainly wasn't clearly established a few years ago in the first appeal, yet we remanded on Carter. That defense would be equally available to Carter, right? Yes. So how do you reconcile what you're saying with our first opinion, which is law of the case? The law of the case doctrine does not apply because the district court never made any factual findings regarding any of these three defendants. Forget the district court. What we said on the first appeal. Yes, but those findings were not made as to these three individual defendants. It was only made as to Carter. But your argument about the fact there was no Brady right clearly established at a stipulated trial of this nature, that was equally available to Carter. I thought you did argue in the first appeal that there was no real trial at which Brady applies. So how can we undo that now? We'd also have to—I mean, it would apply to Carter as well. There shouldn't be a trial against Carter, according to what you're saying. And that is our position. We believe that these three defendants are entitled to qualified immunity because there was no Brady right that was clearly established. And Carter is, too, even though we've already said Carter needs to go to trial. Well, I'm not arguing on behalf of Carter. I'm just arguing on behalf of these defendants. But if we issued that opinion, I'm sure in the district court you'd say, Judge, look at this opinion. The same applies to Carter. I mean, it would be a waste to go to trial. I mean, I think everyone would acknowledge that. But this Court has never made that assessment of whether Mr. Hill had that right at that time or whether it was clearly established. I think we have your argument. Thank you. You've saved time for rebuttal. All right. Ms. Hoffman. May it please the Court. Anna Benvenuti Hoffman on behalf of the plaintiff appellees, Darren and Marie Hill. I'd like to start with a question that Judge Reveley asked first to Ms. Hoffman. So what is the difference between the proof against Carter, which this Court has already found is sufficient to go to trial and there's no qualified immunity, and the proof against Gresset, Hebert, and Wagisback? For against Carter, there are three specific incidents that I think are relevant here. The first is this is a crime that involved two victims. The female victim was brutally raped. Her boyfriend was also robbed and was on the scene. And there are two potential witnesses who could identify, it turns out, wrongfully identify the client, Darren Hill. At the scene of the crime, the initial investigation, Carter and the evidence, this is one of the bases for the finding against Carter, and the evidence indicates it implicates Hebert as well, interviewed the victim. She could not provide an identification or describe because of the extent of her injuries. Meanwhile, the boyfriend could give a very detailed description, which it turns out matches the real perpetrator, Derek Woodbury, to a T. Nevertheless, when they actually report what happened in that initial interview, after other events have happened and there's an identification, a wrongful identification by the female victim, they switch those facts. They say they attribute the detailed identification and ability to identify to the female victim and write out the male victim. The second incident, and that's something that there's evidence that Hebert was present for, and he also signs off on those reports after reviewing them. So there's evidence he had knowledge of what happened and he signed off on the false report. The second thing is a suggestive identification procedure with the female victim. Again, this court has found that there's sufficient evidence of that, no qualified immunity. That goes to trial. There's evidence that Gressett accompanied Carter to that suggestive identification procedure and potentially participated in the suggestion. This is following up, I think, on something Judge Haynes was asking. How is it that on remand in the district court these facts you're talking about got narrowed down for Gressett, even though the court said he could have been there when this happened, got narrowed down to a conspiracy theory as opposed to a direct. I mean, I think the case talks about bystander liability, and there's all kinds of labels that get put on this stuff. But how did it get narrowed down just to conspiracy? I mean, honestly, I think if you look at the procedural history of this case, I think the district court judge did an admirable job with an overwhelming amount of briefing. This was six weeks before the scheduled trial, which was supposed to begin in February of this year. In addition to the narrow issue the district court was supposed to deal with, which was simply whether any of these additional defendants were directly involved in the same conduct that the district court and this court had already found was sufficient to go to trial, the defendants raised this whole new issue or re-litigated this whole issue about whether there had been a trial at all. They also filed extensive briefing that ignored the fact that anything had happened before. There was just so much activity. I think this was sort of a shorthand way. What looked to my guess is what looked to the district court as the easiest, narrowest way to get past this. And frankly, my guess is did not anticipate a second interlocutory qualified immunity appeal at this juncture. I certainly did not, given that this is exactly the same conduct that the court had already, the Fifth Circuit had already dealt with. And I guess no one also realized there's this inter-corporate conspiracy defense that might become a problem. Well, that was never raised below at the district court, and I think there are good reasons that that would not apply. This court actually has never held, certainly not after the Kushner case from the Supreme Court, has never held that it applies to a Section 1983 case. There's also, there's no question that if inter-corporate conspiracy does not Because Kushner said it's a focused feature of antitrust law. Right, and which makes sense because there's specific antitrust objectives where, in that context, it does make sense to say that you can't have a conspiracy among one organization, whereas this would be much more like, I would say, the criminal context where this court just held in a case, actually, that the defendant cited, that you could not extend the inter-corporate conspiracy doctrine to the criminal context because it doesn't further the objectives that, actually, you want to hold people accountable if they are together violating criminal laws, even if they're part of the same organization. I think the same thing would apply to police officers who are together violating constitutional rights. If I can go back, the third incident, which I think is important, is the suppressed identification procedure with the male victim. And this is another thing that was the basis of the Fifth Circuit's opinion, saying that Carter could go to trial, claims against Carter could go to trial. And the finding is that there was an identification procedure, the male victim identified someone else, and that procedure was suppressed, it was hidden. Now, the critical point here is that all of the defendants say, I had nothing to do with that, this never happened, it wasn't me. But this court has already found, a jury could find, that it happened based on the male victim's testimony that it happened. He can't remember who it was who was present, but he said it was more than one detective, at least one male detective. So the question is, who is it who participated in that? And there's specific evidence that indicates if it wasn't Carter, who she says it wasn't Carter, if the jury believed that, they could believe it was Gressit and Hebert. Gressit's the one who left his card with the male victim when he was told to call back and schedule this identification procedure. Hebert's the one who said specifically to Carter, make sure you have an identification procedure with both victims. And then he signs off on the report with no mention of what happened. So I think as the district court found, there's a whole wealth of factual issues that really can only be sorted out by the jury. Let's talk about the third defendant, Wagespach, if I'm saying that right. I don't quite understand your theory on his liability. I understand you're saying he performed the microscopic test and that wasn't included in his report, the fact that he performed that. But how do you tie that in with trying to frame Hill or some other unlawful activity? So I agree that he's less involved than the other. The other two defendants are directly involved in the investigation. Wagespach is off to the side. Did he know Hill was being looked at or that any suspects had been named? I don't know of evidence that he specifically was involved in the investigation or knew the progress of the investigation. The basic facts against Wagespach, and this is, I think, what the district court found, are you could find that there's two main tests that were typically done to confirm the presence of semen or sperm on items in an investigation, which is then necessary to conduct any further testing to include or exclude. And what we can find happened is that he actually conducted a test which showed that there was sperm present, and he lied about it on his report, and he said, actually, no, there's nothing present here. And as a result of that misrepresentation on his report, that fabrication of evidence, which was then passed on, that prevented Mr. Hill from getting testing, which would have prevented him. Okay, let me ask you, and I think this is important on Wagespach. So this is 1992 when DNA testing is in its nascent stage, shall we say, and it seems to me that saying there's no sperm on the underwear actually is exculpatory, more exculpatory in that arena, in that world, in a rape case, because it suggests perhaps there was no rape, than saying there was semen. Was there any case law that would put Wagespach on notice in 1992 that suppressing not the results that show Hill isn't the guy, I would understand that, but simply suppressing the fact that there's semen, nothing more, in 1992, that that's enough to violate the constitutional rights of Hill, whom Wagespach knew nothing of, didn't even know there was a suspect. So that's why I would focus on the false report, the fabrication of evidence, as opposed to a question about suppressing exculpatory evidence, because I agree that based on what he knew, it's harder to show that he actually knew that what he was suppressing was exculpatory, because it would need to be subjected to further testing, there's an argument that he... But are you fabricating evidence when you say, I didn't find anywhere, I'm not aware of any semen, is that fabricating, because the evidence is the underwear, and so how are you fabricating, I mean, I can understand if he substituted some other pair of underwear and goes, okay, this is it, look, there's no semen or something, that that's fabricating, I'm having trouble with how this is fabricating to say a microscopic test wasn't done, or there wasn't semen on this underwear. Well, he's not saying a microscopic test isn't done. He's giving materially misleading or materially false report, and actually this is exactly what this Court looked at in Brown v. Miller. If you look at the specifics that this Court found was a fabrication of evidence, it's a materially misleading results on a scientific report, they say that's fabrication of evidence, and I think also this is what the District Court found, I think that is a finding of fact. Sorry, one thing I wanted to go back to quickly, you were asking about Judge Costa, findings of fact with respect to conspiracy versus other claims. I think whether you consider them with respect to the conspiracy claims or any other claims, any findings of fact made by the District Court I think are binding on this Court in terms of the jurisdiction to review. So the facts that aggressive is involved, the facts that it bears in mind. On Wagaspak, I guess I'm still a little confused. I thought the District Court said that the disputed fact issue is whether or not he actually did perform a microscopic test. Where does it say the District Court found that he somehow knew there was semen present but lied about that? I believe what the District Court says is that he's – I have to look at it. I think the import of what the District Court is saying is that he created a deliberately misleading report. Okay, but Brown v. Miller, which is a 2008 case, could not have put him on notice in 1992 that his conduct was – I mean, the Supreme Court since 1992 has really made it clear year in and year out that there needs to be no high degree of generality but a particularized sort of notice to the officers. Most of this has come up in excessive force, but they haven't limited it to that. So – and notice in 2008 doesn't help you in 1992. So taking the best for you version of the facts – and I realize there's no best facts when a client is in prison falsely for so long. I get that. But legally taking the best facts for you, what evidence – what case would you cite us to that was extant in 1992 that would have put Wagaspak on notice that his conduct was wrongful, taking the facts in the best light for your case? So I would actually – I would still go back to Brown v. Miller because the underlying conduct in that case – I don't remember the exact year, but I believe it was from the 80s, and they said there was no qualified immunity, that that was something. Fabrication of evidence has been clearly established to be wrong. You know, going back to Napoui, going back to – Right, but showing that this is fabrication. I mean, to me, this is a little bit different from the fabrication cases that I've seen anyway. Judge Costa has more experience as a former AUSA, but I have not seen – Hopefully not with fabricating stuff myself, though. Never know.  But I have not – I mean, this is kind of a weird version of fabrication. I'll just say that as far as I'm concerned for what that's worth. And so I'm just saying that I don't think a 2008 case can put him on notice of this kind of – this is – if that's your best case, that's your best case. If you have anything else that you want to cite us to, that you want us to specifically focus on, the notice to Wagisback in 92, then please do. I mean, I would say that I think the distinction is – this is really a fact question, I think. The question is, is what he's reporting false? Is this a fabrication of evidence? And if you look at – and I found exactly what it is the district court said. This is at the record at 13-005. It said, Wagisback reported to Detective Carter that the underwear did not contain any forensic evidence, according to his examination, when actually the jury could find that it did contain forensic evidence. So this is – it's a lie in a police report, and this is a lie that is foreseeably going to cause injury to the criminal defendant. I do not understand a lot of this argument. Isn't this an interlocutory appeal? Yes. Your interlocutory appeal. Not mine. You're saying your client. No, I didn't bring this appeal. The defendants brought this appeal. I would prefer very much to be in the district court for trial. You're plaintiffs. I don't mean that. But it's a non-interlocutory appeal by the officers. Correct. And I hear you talking about facts when there can be no fact issue in this case. We have no jurisdiction of how we view the facts. If the district court says you can view the facts this way, that not only decides that issue, that takes our jurisdiction away. Absolutely correct. And the only addendum I would say to that is anything that the district court has – I apologize. So now you're having to argue that under all the law necessarily, none of these, including Carter and Gresham and Hebert and Wakesfair, that none of them have any legal claim established, not any legal claim. Well, I think that as you pointed out, given that the facts have to be taken as true, anything found by the district court or under the law of the case, anything found established by this court in the prior panel decision, there is very little to look at. The only addendum I would say is to the extent that the defendants argue that any portion of the district court's determination is insufficiently clear, the answer is not to simply, you know, that they would win. The next step is what this court would have to do if it thought the facts were not established, is apply that standard itself, look at the entire record and look at the evidence and find, considering the facts in the light most favorable to plaintiff, whether there's sufficient facts to go to a jury on any of these. My question wasn't on the genuineness of the factual dispute because I agree we don't have jurisdiction. My question is on materiality. It could be that he announces there's no semen on his underwear when there is and that that, even if true, isn't a sufficient violation or sufficiently clearly established in 1992 to deny him qualified immunity. That's what my question is directed to because I want to be sure that's clear to you so you can respond to that, that assuming the evidence is as best it can be for your case, is that material because was it clearly established in 1992 that the conduct alleged, which is saying there's no semen when there is or saying that there was no microscopic test done when there was, that that's enough to be a violation of the constitutional rights of Hill, a person unknown to August Peck who didn't even know there was a suspect? That's the question. Right, and I believe, yes. I mean, I think that the entire point of doing the forensic testing is so that it can either be used to include or exclude. I think it's the obvious result, if you're doing forensic testing and lying about what it is that you found, that that's going to impair the rights of the eventual criminal suspect. I want to go back, or I want to go quickly to another issue. So the falsity would have to be, I mean, assume it is that he says, the report says no semen on the underwear. Again, how is that, how does that harm the defendant? I mean, as Judge Haynes says, if anything, it might show there's less evidence that a rape occurred. So how does it? In this case, it's the false report about what's present precluded him from doing. Getting DNA. It's only because you link up, right? Right, and it's not limited to DNA. I mean, at the time, the state of the art was a different type of forensic testing, but it's not that there wasn't any, it was other kinds of serological testing. It's not that there wasn't testing that could have been done. Yeah, but it was very broad. I mean, it was this kind of stuff like you're an A blood type and this guy's B, so that excludes you. That was the Thompson case that ultimately went to the U.S. Supreme Court where they suppressed that it was a different blood type. But it wasn't this kind of refined analysis where we can tell it's Hill or it's Woodbury back in 92. So that's why, again, in this very generic kind of thing that he's doing on a police report when there's not a suspect, not aware of a suspect, it's not at all clear what is and isn't exculpatory and inculpatory, is that enough? Again, taking the facts completely in every possible way in your favor. I mean, I think the bad faith, which is I think what we could prove, bad faith lie on a police report about critical evidence in a rape case, yes. I think anybody knows that that's wrong. Where's the bad faith? Where's the evidence of that? I know it's a mistake, no doubt, negligible, but where's the bad faith? Well, I mean, that's a jury question. But the question is that he's performed these tests. I mean, there's no question later when they went back in 2012 and they did the testing, there's abundant semen and sperm on this. This is what they did the testing on. They did the DNA that exonerated himself. And by then they had pretty advanced. I mean, this has been happening actually in Dallas County where I office. There's been quite a few exonerations based on DNA testing because they preserved the evidence. As they preserved this evidence, they didn't throw the underwear away. It was there. And so then when technology caught up to the evidence, it led to a number of exonerations. And so they kept he didn't throw the underwear away. He didn't pretend it wasn't there. I mean, the evidence is still there and therefore was able to finally way late in the game exculpate your client. That's true. It would have been much worse if he had actually destroyed it. But I think that the lie is what prevented him. It never prevented him from testing the underwear himself. The underwear was there. I think it's reasonable that you don't expect that the government officers are lying about the state of the analysis that they've done on the evidence to the extent of saying that they looked at it and there's no semen present. Okay. Thank you. We have your argument. I just realized we have Kaufman and Hoffman. All right, Ms. Kaufman. Your Honors, the district court's single factual finding as to Wagaspak is immaterial to both a fabrication as well as a Brady claim. In order to establish a fabrication claim, plaintiff would have needed to show that Wagaspak created false evidence and that the state later used that evidence to obtain a conviction. If we look at the district court's actual factual finding, it found only that Wagaspak may have withheld the result of a microscopic test, not that he intentionally falsified any of the results of his report. Further, it's undisputed that Wagaspak's report was never used in Mr. Hill's criminal proceedings. Okay, but she's saying that the withholding is itself a fabrication. That's when we got down this whole path of the clearly established. So do you have any comments on the whole clearly established concept as it relates to Wagaspak? Your Honor, this all occurred in 1992 when it's uncontested that NOPD did not have DNA testing capabilities. A positive microscopy test result is not material exculpatory evidence. Rather, it's only potentially exculpatory evidence because it merely shows you that sex with a male occurred. You'd need to do further testing, either blood type testing or DNA testing, in order for it to be exonerative. And this court held in the Allen v. Collins case that a positive microscopy test result is not material exculpatory evidence. It's only potentially exculpatory evidence which requires a showing of bad faith under the Arizona v. Youngblood case. Here, the district court did not make a finding that Wagaspak acted in bad faith, nor is there anything in the record to support that. What would we look at? Because intent is always hard to prove. If this gets misplaced somehow, I could say, oh, I didn't mean to misplace this red brief. Somebody else could say you intentionally destroyed it. We just know it's gone. I last had it, and now it's gone. How do we prove what was in my heart when it went missing, or even that it was me, but I was in my custody and now it's missing? What evidence is there ever going to be, and does that affect this whole genuineness of factual dispute issue? We don't know his intent, but I would point the court to the Allen v. Collins case that says that you need, that it's a positive microscopy test result is not material exculpatory evidence. I'd also like to point out that the plaintiffs have cited numerous facts that were not part of the district court's findings. In fact, plaintiffs made 32 factual assertions that are based solely on their statement of contested facts, not the district court's finding. And on remand, the defendants objected strenuously to the evidence offered in support of these factual assertions, and these objections have never been ruled on by the district court. Well, you don't want us remanding for another round of fact findings and evidentiary rulings, do you? No, we do not. And they're done that. I agree, but I would like to point out that we need to look at what the district court actually found, not the assertions asserted by plaintiffs' counsel. Plaintiffs' counsel also said— Yes, but we can affirm for any ground supported by the record. So if the record would support that there is disputed facts, we can affirm on that ground, even if the district court could have, would have, should have said it a little better. Yes, that's correct. No, we can't affirm. We can't affirm a summary judgment. Affirm in the sense that we remand for trial. Because that isn't a summary judgment. Right. Your clients are appealing the denial of a summary judgment. That's correct. Well, if we affirm, then we don't affirm. We dismiss. If you affirm the district court's ruling, then the case would be remanded back to the district court for trial. And we're asking this court to reverse and find that these defendants are— No, no. We dismiss. We have no jurisdiction. It's our position that this court does have jurisdiction. We have no jurisdiction if there's any support for a fact issue. And you've been arguing that there wasn't, that as a matter of law, you should have gotten a summary judgment. That's correct. But you're appealing the denial of a summary judgment. Yes. And all we can do is dismiss it. If we affirm it— This court does have jurisdiction. If we affirm it, we're affirming something the trial court didn't do. I'm wasting your time. Let's go home. Okay. Yeah, we'll sort this out. Once we figure out what we're going to rule, we'll figure out what to call it. How's that? Thank you. And I'm sure that we will be guided by Judge Rieveley's much greater knowledge of how this is done. Thank you. Thank you.